518 So.2d 1171 (1988)
Susan McGuire, Wife of/and Robin McGUIRE
v.
DAVIS TRUCK SERVICES, INC. and American Druggist Insurance Company.
No. 87-CA-429.
Court of Appeal of Louisiana, Fifth Circuit.
January 11, 1988.
Rehearing Denied February 17, 1988.
James F. Willeford, John Ryan, Pamela M. West, New Orleans, for plaintiff-appellant.
John E. McAuliffe, Jr., New Orleans, for defendant-appellant and defendants-appellees.
Owen A. Neff, New Orleans, for defendant-appellee.
Before CHEHARDY, KLIEBERT and DUFRESNE, JJ.
DUFRESNE, Judge.
This appeal arises from pretrial motions in a personal injury suit, in which there is a dispute over the extent of the excess insurer's liability as a result of the primary insurer's insolvency. The Louisiana Insurance Guaranty Association and the plaintiffs have appealed from summary judgment that held the excess carrier liable only for damages between $500,000.01 and $1,500,000.00.

BACKGROUND
Dr. Susan McGuire and her husband, Robin McGuire, filed suit to recover for personal injuries sustained by Dr. McGuire, who is a dentist, in a collision between her *1172 automobile and a truck owned by Davis Truck Service, Inc. Among the original defendants was Davis' automobile insurer, American Druggists' Insurance Company (ADI), under a policy with liability limits of $500,000.
Two years after suit was filed, the district court granted a stay of the proceedings against ADI because ADI was undergoing court-ordered rehabilitation in the state of Ohio. Plaintiffs amended their petition, adding as a defendant the Louisiana Insurance Guaranty Association (LIGA), pursuant to LSA-R.S. 22:1382. Plaintiffs later amended again to name as a defendant Angelina Casualty Company, which carried a million-dollar umbrella liability insurance policy on Davis Truck Service.[1]
Subsequently plaintiffs, LIGA and Angelina all filed motions for summary judgment.
Plaintiffs sought a ruling that "Angelina Casualty Company, as umbrella insurer for Davis Trucking, provides liability coverage for all amounts above that recoverable from the primary insurers up to $1,000,000.00." Because no monies are coverable from the primary insurer here, such a ruling would make Angelina liable for all amounts up to $1,000,000.
Similarly, LIGA contended in its motion for summary judgment that under the terms of the Angelina policy, Angelina provides coverage to Davis from "dollar one" upon liquidation of ADI. LIGA based this contention on LSA-R.S. 22:1386(1), which LIGA contends requires a claimant to exhaust all rights under all other policies available to him before he can recover from LIGA. Further, because the Angelina policy limits are $1,000,000 and LIGA would receive a credit for payments made under that policy, LIGA asserted there can be no liability on behalf of LIGA and it should be dismissed from this matter.
Angelina sought summary judgment that its policy provides coverage only for liability between $500,000 and $1,000,000 or, in the alternative, that the policy provides coverage between $150,000 (the maximum that LIGA can pay, under R.S. 22:1382) and $1,000,000.
The district court rendered judgment denying the plaintiffs' and LIGA's motions for summary judgment, but granting Angelina's motion. Specifically, the court ruled that Angelina's policy provides coverage "to Davis Trucking Service, Inc. for liability assessed against Davis Trucking Service, Inc. of the kind covered by said policy and in amounts between $500,000.01 and $1,500,000.00."
The judgment was rendered on January 9, 1987, but contained a mathematical error that was corrected by an amended judgment rendered on January 22, 1987. Both judgments were appealed by plaintiffs and LIGA.
At issue on appeal is the interpretation of the following provisions in the Angelina policy. The first is under the "Coverage Agreements" section:
II. LIMIT OF LIABILITY. The Company shall only be liable for the ultimate net loss the excess of either
(a) the amount recoverable under the underlying insurances as set out in Item 7 of the Declarations, or
(b) the amount of the retained limit stated in Item 4 of the Declarations in respect of each occurrence not covered by said underlying insurances.
(hereinafter called the "underlying limits"): and then only up to a further limit as stated in Item 5 of the Declarations in respect of each occurrence * * *. [Emphasis added.]
The second is under the "Conditions" section:
L. OTHER INSURANCE. If other valid and collectible insurance, whether or not scheduled hereunder, which is written by another insurer is available to the Insured covering a loss also covered by this policy, other than insurance that is in excess of this policy, the insurance *1173 afforded by this policy shall be in excess of and shall not contribute with such other insurance. * * * [Emphasis added.]

LIABILITY OF LIGA
The issues of whether the Angelina policy "drops down" and of what portion, if any, LIGA must pay are closely intertwined. We start our analysis by discussing the extent of LIGA's statutory liability.
The Insurance Guaranty Fund was established by Acts 1970, No. 81, which enacted LSA-R.S. 22:1375-1394. R.S. 22:1380 created the Insurance Guaranty Association to administer the fund. The purpose of the fund is "to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer * * *." R.S. 22:1376. These statutes are to be liberally construed to effect the stated purpose. R.S. 22:1378.
"Covered claims" refers to claims covered by the policy of an insolvent insurer. R.S. 22:1379(3). R.S. 22:1382(1)(a) states the association shall be obligated for that amount of each covered claim that is in excess of $100 and is less than $150,000. Under R.S. 22:1382(1)(b), the association shall "[b]e deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent."
Regarding the latter provision, our Supreme Court has held, "The only statutory interpretation which will effect the purposes of the Insurance Guaranty Association Law is to deem LIGA the insurer with all the obligations of the insolvent insurer. To the extent of that coverage, the individual defendants were insured." Hickerson v. Protective Nat. Ins. Co., 383 So.2d 377, 379 (La.1980).
R.S. 22:1386, titled "Nonduplication of recovery," provides,
"Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this Part shall be reduced by the amount of any recovery under such insurance policy. * * *"
This is the provision upon which LIGA relies to escape liability. LIGA argues that R.S. 22:1386 requires the McGuires to exhaust the Angelina policy limits before they can recover against LIGA. Thus, LIGA contends, the plaintiffs' damages would have to exceed $1,000,000 for LIGA to be liable.
We find no merit to that argument in this situation, because the other insurance policy here is an excess policy. LIGA stands in place of the insolvent insurer here (see Hickerson, supra); consequently, LIGA is liable as the primary insurer to the extent of LIGA's obligationi.e., for that amount of plaintiffs' damages that exceed $100 and are less than $150,000. R.S. 22:1382. See also, Billeaudeau v. Lemoine, 386 So.2d 1359 (La.1980); Hickerson, supra.

"DROP DOWN" OF EXCESS POLICY
Angelina asserts that an excess insurance policy does not "drop down" upon the insolvency of its underlying insurers. It argues that an umbrella policy is designed and purchased to cover only catastrophic losses in excess of any primary coverages, that such limited coverage is reflected in the policy's modest premium, and that requiring the excess carrier to "drop down" its coverage forces the excess insurer, in effect, to guarantee the solvency of the underlying insurers.
In support of its position, Angelina cites several cases that appear to agree with its contention. None of these opinions was rendered by a court we are bound to follow, however, and we find none of them applicable. Two are judgments of the local federal district court with no "Findings of Fact and Conclusions of Law" attached, which are not persuasive absent explanation of the reasons for the rulings. The other cases cited by Angelina are distinguishable *1174 from the facts here, either because the language of the policies in them differs from the language here, or because the opinion does not recite the language of the policy at issue.
The terms and provisions of a contract are construed in their general and popular meaning. LSA-C.C. art. 2047. "A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party." LSA-C.C. art. 2056.
We have considered these standard principles and we have read the policy as a whole. Under the wording of the policy, the only meaning we can attribute to the term "recoverable," as used in Section II(a) of the Coverage Agreements, is the plain and usual meaning of "collectible": that is, "Debts, obligations, demands, liabilities that one may be made to pay by means of legal process." Black's Law Dictionary 1147, 238 (5th ed. 1979). This interpretation is supported by the use of the phrase "other valid and collectible insurance" under Section L of the Conditions.
Considering these phrases in light of the policy as a whole, we conclude that Angelina is required to cover the ultimate net loss in excess of the amount recoverable from the underlying insurer (in this case, $149,999.99 is recoverable from LIGA). Accordingly, Angelina is liable for damages from $150,000 up to $1,149,999.99. See Poirrier v. Cajun Insulation, Inc., 501 So.2d 800 (La.App. 4 Cir.1986), writs denied 503 So.2d 471 (La.1987); Mission Nat. Ins. Co. v. Duke Transp. Co., Inc., 792 F.2d 550 (5th Cir.1986); Gros v. Houston Fire & Casualty Insurance Company, 195 So.2d 674 (La. App. 1 Cir.1967), writ denied 250 La. 644, 197 So.2d 898 (1967).
We find no merit to Angelina's claim that Section Q, of the Conditions, regarding maintenance of underlying insurances, relates to insolvency of an underlying insurer:
Q. MAINTENANCE OF UNDERLYING INSURANCES. It is a condition of this policy that the underlying insurances as set out in Item 7 of the Declarations shall be maintained in full effect during the currency of this policy except for any reduction of the aggregate limit or limits applicable thereto solely by payment of claims in respect of occurrences occurring during the period of this policy. Failure of the Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure, the Company shall only be liable to the same extent as it would have been had the Insured complied.
Rather, this provision clearly deals with the insured's responsibility to maintain the underlying insurance policies.
Finally, we recognize that under Section J of the Conditions, Angelina's liability would be only for amounts in excess of the underlying limits:
J. LOSS PAYABLE. Liability under this policy with respect to any occurrence shall not attach unless and until the Insured, or the Insured's underlying insurer, shall have paid the amount of the underlying limits on account of such occurrence. * * *.
We do not find this determinative, however, because the use of the terms "recoverable" and "valid and collectible" earlier in the policy make the policy's meaning ambiguous. Where the provisions of an insurance policy are in conflict or ambiguous, the policy is interpreted in favor of the insured and in favor of coverage. See Poirrier, supra; Lee v. Liberty Mut. Ins. Co., 387 So.2d 621 (La.App. 4 Cir.1980).
We acknowledge the reasons cited by Angelina against establishing a "drop-down" of excess insurance. Umbrella policies provide specialized coverage and the policy premiums are based on the limitation of their risks by the presence of underlying primary insurance. We do not agree, however, that requiring the excess carrier in this case to "drop down" means that excess carriers will be forced to guarantee the solvency of underlying insurers. The excess carrier, who is responsible for the policy language, can rewrite its own policy to make clear any intent that its coverage will not drop down when the primary insurer becomes insolvent.
*1175 For the foregoing reasons, the judgment of the district court is affirmed in part, reversed in part, and recast as follows:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the motion for summary judgment by defendant Louisiana Insurance Guaranty Association is denied; that the motion for summary judgment of the plaintiffs, Susan McGuire, wife of/and Robin McGuire, is granted; and that the motion for summary judgment of Angelina Casualty Company is granted in part and denied in part.
IT IS HEREBY DECLARED that the umbrella liability policy issued by Angelina Casualty Company to Davis Trucking Service, Inc., ZA 295 31 93, provides coverage to Davis Trucking Service, Inc., for liability assessed in this case against Davis Trucking Service, Inc., of the kind covered by that policy, in amounts from $150,000.00 up to and including $1,499,999.99.
Costs of this appeal are to be divided equally between Louisiana Insurance Guaranty Association and Angelina Casualty Company.
AFFIRMED IN PART,
REVERSED IN PART,
RECAST AND RENDERED.
NOTES
[1] Although the Angelina policy was cancelled for nonpayment, the accident involved here occurred while the policy was still in effect.