556 So.2d 120 (1990)
Peggy O. WEAVER
v.
Victor D. KITCHENS, Rollins, Inc., Continental Insurance Co., the City of Gretna and the Transit Casualty Co.
No. 89-CA-538.
Court of Appeal of Louisiana, Fifth Circuit.
January 17, 1990.
Peter L. Hilbert, Jr., Jose R. Cot, New Orleans, for third party defendant-appellee.
G. Bruce Parkerson, New Orleans, for defendant-appellant.
Before KLIEBERT, DUFRESNE and WICKER, JJ.
DUFRESNE, Judge.
This appeal questions the extent of the excess insurer's liability in view of the primary insurer's insolvency. The assured, City of Gretna (City) and Louisiana Insurance Guaranty Association (LIGA), challenge the summary judgment dismissal of the third-party excess liability carrier, Granite State Insurance Company (Granite *121 State). Because we find that Granite State was not entitled to dismissal as a matter of law, LSA-C.C.P. art. 966, we reverse the district court judgment and remand the case for proceedings consistent with the decree.
The City was insured under a multi-peril policy issued by Transit Insurance Company (Transit), which afforded combined single-limit liability coverage of $500,000. The City also carried excess insurance in the form of an umbrella liability policy issued by Granite State, which provided for individual occurrence and aggregate annual maximum liability coverage of 5 million dollars. The insurer's liability is subject to the following limitation:
"11. LIMIT OF LIABILITY. The Company shall only be liable for the ultimate net loss, the excess of either:
(a) The limits of the underlying insurances as set out in the schedule in respect of each occurrence covered by said underlying insurances, or
(b) the amount as set out in the declarations as the self-insured retention in respect of each occurrence not covered by said underlying insurances,
(hereinafter called the `Underlying Limits'):
and then only up to a further sum as stated in item 3(a) of the Declarations in all in respect of each occurrence, subject to a limit as stated in item 3(b) of the Declarations in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and in respect of Personal injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured."
The policy also states in a separate section:
"L. OTHER INSURANCE. If other valid and collectible insurance with any other insurer is available to the Assured covering a loss also covered by this policy, other than insurance that is in excess of the insurance afforded by this policy, the insurance afforded by this policy shall be excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance."
The dispute over the meaning of these two payment provisions has generated the appeal.
As a result of personal injuries and property damage she sustained in the July 1983 intersectional collision, Peggy Weaver sued the alleged tort-feasor driver, his employer and its insurer in negligence. Plaintiff claimed against the City and its insurer Transit, alleging negligence and strict liability. When Transit was declared insolvent, plaintiff filed a first supplemental and amending petition against LIGA, alleging that it was responsible for funding and insuring the claims against the insolvent primary carrier. The City third-partied Granite State for defense and indemnity, arguing that due to Transit's insolvency Granite State's coverage was primary.[1]
Granite State moved for summary judgment dismissal from suit contending that pertinent policy language did not oblige it to drop down to provide primary liability coverage to the City. The district court agreed and dismissed the excess insurer from suit.
The City and LIGA have lodged this devolutive appeal. In view of Transit's insolvency, the issues for review are: (1) whether Granite State's policy drops down to provide first-dollar primary coverage, and (2) whether Granite State provides coverage to the assured in excess of LIGA's statutory limit. In resolving these issues and establishing the priority of the payment obligations, we necessarily clarify the responsibility of LIGA as well as that of Granite State.

I
In response to recurrent insurer insolvencies, the Louisiana Insurance Guaranty Law was enacted, expressly to:
"[P]rovide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in *122 payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers."
LSA-R.S. 22:1376.
To that end, LIGA was created to administer and implement the law. It is obligated to the extent of covered claims which existed prior to the determination of the insurer's insolvency. It is:
"[D]eemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent."
LSA-R.S. 22:1382(1)(b). LIGA is therefore responsible for the payment of each claim covered under an insolvent insurance policy that is between $100 and $150,000. LSA-R.S. 22:1379(3) and 22:1382(1)(a).
The statutes are to be liberally construed to effect its stated purpose. LSA-R.S. 22:1378. Construction of the provisions in favor of claimants and policy holders to advance and protect their interests rather than the interests of the LIGA is mandated. Senac v. Sandefer, 418 So.2d 543 (La. 1982). A policyholder with an insolvent insurer is not protected. Accordingly LIGA substitutes for the insolvent insurer with its associated duties and obligations. Hickerson v. Protective Nat. Ins. Co., 383 So.2d 377 (La.1980); H & H Sewer Systems v. Ins. Guaranty Ass'n, 392 So.2d 430 (La. 1980).
It is not disputed that the tort claims, if proved against the City are covered under Transit's policy. Neither is it contested that Transit is insolvent. Therefore, LIGA stands in for Transit and is treated as though it were the primary liability insurer. Billeaudeau v. Lemoine, 386 So.2d 1359 (La.1980); McGuire v. Davis Truck Services, Inc., 518 So.2d 1171 (La.App. 5 Cir. 1988). The tort claims against the City of Gretna are covered by LIGA, subject to its statutory limit.

II
The reasoning by which we concluded that LIGA, rather than Granite State, responds to provide the first layer of liability coverage compels us to conclude that Granite State's obligation as an excess carrier, to respond to covered claims, begins when the claim exceeds $150,000.
We do not believe that the City sought the benefit of first-dollar protection in purchasing the Granite State policy, and, imposing such a duty of indemnification in effect would oblige the excess carrier to guarantee the solvency of the primary insurer. We have found that this obligation is bestowed by statute on LIGA. However, the City's obvious intention in obtaining umbrella coverage was to insulate itself from liability for claims beyond the primary policy limits. Accordingly the terms of the excess policy stipulate that Granite State provides liability coverage for the ultimate net loss, or amount of claim, that exceeds the limits of underlying insurances. While originally the underlying insurance referred to was the Transit policy, when LIGA was substituted as the primary insurer, its statutory liability limits became the limits of the underlying insurance. Therefore Granite State's liability is triggered when the claim exceeds $150,000. In this instance the umbrella insurer does not provide drop down primary coverage but furnishes excess coverage to satisfy claims that exceed the underlying limits.
We are not persuaded by appellant's submission in brief that Nasello v. Transit Cas. Co., 530 So.2d 1114 (La. 1988), requires a different result. In that case the dispute over the priority of payment was between LIGA for Transit, the insolvent primary insurer on the rental vehicle involved in the accident, and Great Northern, the tort-feasor's employer's insurer whose policy supplied coverage in "excess over any other collectable insurance" on non-owned vehicles. Interpreting the Other Insurance clause of the policy, to establish the order of coverage, the majority found that there was no other collectible insurance on the *123 vehicle involved in the accident. Therefore Great Northern became the primary insurer in view of Transit's insolvency. LSA-R.S. 22:1386(1).
In the case before us, the Limitation of Liability clause of the policy establishes the order of coverage as between the primary and excess carriers. Here Granite State is a true excess insurer, as its umbrella policy implies, whose liability is triggered for the City's losses in excess of the underlying insurance. The Other Insurance clause in this policy governs the order of payment as between Granite State and any liability policy, other than the Transit policy, that insures the City. See McKenzie and Johnson, 15 Louisiana Civil Law Treatise, § 228 (1988).

DECREE
For the foregoing reasons the judgment of the district court dismissing the City's third-party demand against Granite State is reversed and the case is remanded as follows:
It is hereby declared that Louisiana Insurance Guaranty Association is deemed to be the insurer of the City of Gretna for claims covered under the policy of insurance issued by Transit Insurance Company, for amounts up to the statutory liability of $150,000.
It is further declared that the umbrella policy issued by Granite State Insurance Company to the City of Gretna provides excess coverage for claims covered by that policy and the Transit policy which exceed $150,000, to the limits of the excess policy.
Costs of the appeal are referred to the merits of the suit.
REVERSED AND REMANDED WITH ORDER.
NOTES
[1] The record does not contain a copy of LIGA's third-party demand against Granite State.