570 So.2d 508 (1990)
Peggy O. WEAVER
v.
Victor D. KITCHENS, Rollins, Inc., Continental Insurance Co., the City of Gretna and the Transit Casualty Co.
No. 89-CA-538.
Court of Appeal of Louisiana, Fifth Circuit.
November 14, 1990.
Writ Denied January 18, 1991.
*509 Lee Martiny, Mark N. Caracci, Metairie, for plaintiff-appellee.
Joseph R. Ward, Jr., New Orleans, for defendant-appellee.
G. Bruce Parkerson, Texaco Center, New Orleans, W.J. LeBlanc, Jr., Gretna, for defendant-appellant.
Peter L. Hilbert, Jr., New Orleans, for third-party defendant.
Before KLIEBERT, DUFRESNE and WICKER, JJ.
DUFRESNE, Judge.
When the primary liability insurer becomes insolvent, what is the excess liability insurer's coverage obligation? Reconsideration of this question obliges us us to rank the insurance coverages available to the City of Gretna in this tort claim.
The City of Gretna was insured under a multi-peril policy issued by Transit Insurance Company, which afforded combined single-limit liability coverage of $500,000. The City also carried excess insurance in the form of an umbrella liability policy issued by Granite State Insurance Company, which provided for individual occurrence and aggregate annual maximum liability coverage of 5 million dollars.
As a result of personal injuries and property damage she sustained in a July 1983 intersectional collision, Peggy Weaver sued the alleged tortfeasor driver, his employer and its insurer in negligence. Weaver claimed against the City and its insurer Transit, alleging negligence and strict liability. Transit was declared insolvent. Weaver filed a first supplemental and amending petition against Louisiana Insurance Guaranty Association (LIGA), alleging that it was responsible for funding and insuring the claims against the insolvent primary carrier. The City third-partied Granite State for defense and indemnity, arguing that due to Transit's insolvency Granite State's coverage was primary.
There was no dispute that the tort claims, if proved against the City, were covered under Transit's policy. Neither was it contested that Transit was insolvent. Granite State moved for summary judgment seeking a judicial declaration that, notwithstanding Transit's insolvency, it did not drop down to provide primary liability coverage to the City for claims not exceeding $500,000. The City and LIGA took the adverse position that Granite State should drop down to afford primary coverage from "dollar one", before resort could be had to LIGA funds. The district court granted summary judgment and dismissed the excess insurer from suit.
The City and LIGA lodged a devolutive appeal arguing alternatively that Granite State provided first dollar or drop down liability coverage. In our original opinion [556 So.2d 120 (La.App. 5th Cir.1990)] we held that LIGA was deemed to be the City's insurer for claims covered by the Transit policy up to the statutory limit of $150,000. We further found that Granite State's umbrella policy dropped down to provide coverage above $150,000, to the limits of the excess policy. Thus if it were cast in judgment on the original or incidental demands the City was "insured", first by LIGA and immediately above that limit by Granite State.
LIGA and Granite State applied for writs. The Supreme Court granted the writ applications and remanded the case to us for reconsideration in light of Kelly v. Weil, 563 SO.2d 221 (La.1990), and Robichaux v. Randolph, 563 So.2d 226 (La. 1990).
Our re-consideration obliges us to modify our original conclusions. For the reasons expressed in our original opinion we affirm our holding that, as a result of Transit's insolvency, LIGA provides first dollar coverage to the City on covered *510 claims totaling between $100 and $150,000, LSA R.S. 22:1375 et seq. On reconsideration we reverse our holding that Granite State drops down to provide liability insurance coverage immediately above the statutory limit. Instead we hold that Granite State provides coverage for covered claims against the City that exceed $500,000.
The Granite State policy contains a schedule of underlying insurance which lists [Transit's] comprehensive general liability coverage of $500,000.00, as well as automobile, employers and miscellaneous liability coverages. The dispute between the City, LIGA and Granite State was generated by language in the latter's excess policy;
11. LIMIT OF LIABILITY. The Company shall only be liable for the ultimate net loss, the excess of either:
(a) The limits of the underlying insurances as set out in the schedule in respect of each occurrence covered by said underlying insurances, or
(b) the amount as set out in the declarations as the self-insured retention in respect of each occurrence not covered by said underlying insurances, (hereinafter called the "Underlying Limits"):
and then only up to a further sum as stated in item 3(a) of the Declarations in all in respect of each occurrence, subject to a limit as stated in item 3(b) of the Declarations in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and in respect of Personal injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured.
* * * * * *
6. ULTIMATE NET LOSS. The term "Ultimate Net Loss" shall mean the total sum which the Assured, or any company as his insurer, or both, become obligated to pay by reason of personal injury, property damage or advertising liability claims, either through adjudication or compromise, and shall also include hospital, medical and funeral charges, and all sums paid as salaries, wages, compensations, fees, charges and law costs, premiums on attachment or appeal bonds; interest, expenses for doctors, lawyers, nurses, investigators and other persons, and for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder, excluding only the salaries of the Assured's or of any underlying insurer's permanent exployees.
The Company shall not be liable for expenses as aforesaid when such expenses are included in other valid and collectible insurance.
We originally held that as LIGA stood in for Transit, its limitation of liability provided the limit of the underlying insurance and held that Granite State's coverage responsibility began when the covered claim exceeded the statutory limit. Reconsidering the policy language in light of the Supreme Court mandate we conclude that the excess policy is a "type two" policy as described in Kelly, 563 So.2d at 222. The insuring agreement renders Granite State liable for the ultimate net loss in excess of the limit of the underlying insurances as set out in the schedule in respect to each occurrence covered by said underlying insurance. Excess coverage is not dependent on the recoverability or collectibility of the primary limits. The language of the Granite State policy therefore does not provide for a drop down. Granite State's coverage obligations begin when the amount of the claim exceeds $500,000, the limit of the underlying insurance, the Transit policy. See Radar v. Duke Transp., Inc., 492 So.2d 532 (La.App. 3 Cir.1986); Mission v. Duke Transportation Co., Inc., 792 F.2d 550 (5th Cir.1986).
Therefore coverage afforded to the City is as follows. LIGA responds to pay claims up to $150,000.00, subject to a $100 deductible. There is a gap in coverage for which the City is uninsured up to $500,000. Granite State provides coverage for the ultimate net loss from $500,000.01 to 5 million dollars.

*511 DECREE
For the foregoing reasons the judgment of the district court dismissing the City's Third Party Demand against Granite State is reversed. Granite State's motion for partial summary judgment is granted. Granite State's excess policy and its attendant coverage will not be applicable until the ultimate net loss for which the City is liable exceeds $500,000.00. The case is remanded to the district court for further proceedings.
AMENDED, RECAST AND REMANDED FOR FURTHER PROCEEDINGS.