635 So.2d 407 (1994)
John SCORDILL, III
v.
Chalmous SMITH, Jr., Steve D. Thompson Trucking Inc., Western Preferred Casualty Company, and/or ABC Insurance Company.
No. 93-CA-2082.
Court of Appeal of Louisiana, Fourth Circuit.
March 29, 1994.
Gus A. Fritchie, III, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, for appellant Century Indem. Co.
Henry G. Terhoeve, Mathews, Atkinson, Guglielmo, Marks & Day, Baton Rouge, for appellee Louisiana Ins. Guar. Ass'n.
Before LOBRANO, PLOTKIN and LANDRIEU, JJ.
LOBRANO, Judge.
The sole issue in this appeal is whether the excess insurer's coverage drops down[1] to "dollar one" in advance of any payment by the Louisiana Insurance Guaranty Association (LIGA) due to the insolvency of the primary insurer. We hold that it does.
Century Indemnity Company issued an excess policy to Steve D. Thompson Trucking Company. Western Preferred Casualty *408 Company was the primary insurer. As a result of an accident involving Thompson's employee, this lawsuit was initiated by plaintiff, John Scordill. During the pendency of these proceedings, Western Preferred became insolvent. Plaintiff then third-partied both LIGA and Century.
Prior to trial Century funded a settlement paying $112,500.00 to the plaintiff. LIGA and Century both agreed that the issue of drop down coverage would be submitted to the trial court on cross-motions for summary judgment.
The trial court ruled in LIGA's favor and concluded that Century's coverage dropped down to "dollar one" coverage for this accident. Century perfects this appeal.
Century concedes that the language of the "Limit of Liability" provision of its policy requires drop down coverage in the event of the primary insurer's insolvency, but argues that it should only drop down to LIGA's statutory maximum.[2] Century relies on the reasoning of McGuire v. Davis Truck Service, Inc., 518 So.2d 1171 (La.App. 5th Cir.1988), writ denied, 526 So.2d 791 (La. 1988), which decided this precise issue.
Initially we observe, and indeed Century has conceded, that where the "Limit of Liability" language of an excess policy provides for coverage in excess of "the amount recoverable under the underlying insurances" the excess policy drops down on the insolvency of the primary insurer. Kelly v. Weil, 563 So.2d 221 (La.1990).[3] Thus, if LIGA was non-existent, Century would provide coverage from dollar one in this case. However, Century argues that LIGA's responsibility is to provide coverage for an insolvent insurer, and thus it must "stand in the shoes" of Western Preferred. In fulfilling its statutory obligation, Century asserts that LIGA must pay its statutory maximum before any payment by Century.
Where an insurer becomes insolvent LIGA shall "[b]e deemed the insurer to the extent of its obligation on the covered claims and to such an extent shall have the rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent...." La.R.S. 22:1382(A)(2). That statutory obligation, however, is qualified by La.R.S. 22:1386 which provides, in pertinent part:
"Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required first to exhaust his rights under such policy." (emphasis added)
LIGA argues that the claimant in this case must first recover from Century since it is "other insurance" which is available to him.
The jurisprudence addressing the issue raised in this appeal is somewhat contradictory.
In McGuire v. Davis Truck Services, Inc., supra, relied on by Century, our brethren on the Fifth Circuit held that LIGA must stand in place of the primary insurer and that the excess insurer's coverage dropped down to LIGA's statutory maximum. The Supreme Court refused writs. However, shortly thereafter, Nasello v. Transit Casualty Co., 530 So.2d 1114 (La.1988) reached what appears to be an opposite result. In that case, Transit Casualty was the primary insurer of the rental car driven by defendant. Great Northern Insurance Company also provided primary coverage to the defendant's employer. However, its policy provided that for any auto not owned by the insured, coverage would be excess over any other collectible insurance. Upon Transit's insolvency, Great Northern asserted that its coverage should be excess to LIGA's obligation to fulfill Transit's obligation. Without mentioning McGuire, the Supreme Court held that Great Northern's coverage dropped down to dollar one because "[t]here is no other collectible insurance, and Great Northern became the primary insurer upon the insolvency of Transit Casualty, according to the language of the policy." Nasello, supra, at 1115.
*409 Implicit in the Nasello decision is the conclusion that where other insurance is available to a claimant, LIGA does not assume the obligations of an insolvent insurer. Although the Nasello court made no mention of McGuire, it arguably overrules that decision. Century, however, counters that Nasello is distinguishable and that McGuire is still viable and controlling. Century points to the fact that McGuire involved a "true" excess carrier, whereas Nasello involved two primary carriers, one of whom became an excess carrier when a non-owned covered vehicle was involved in an accident. This same distinction was utilized by the Fifth Circuit in Weaver v. Kitchens, 570 So.2d 508 (La.App. 5th Cir.1990) where the Court rationalized that the Nasello decision determined the order of coverage between two primary carriers based on the policy language but did not address the order of coverage between primary and excess carriers.
The Nasello decision was followed by the First Circuit in Gurley v. Fisher, 598 So.2d 1199 (La.App. 1st Cir.1992). In that case the insolvency of the primary insurer of the owned vehicle resulted in the insurer of the non-owned vehicle becoming the primary carrier. LIGA was not considered "other collectible insurance."
Considering this jurisprudential background, and for the following reasons, we conclude that Nasello controls and that LIGA is not required to assume the obligations of an insolvent insurer where there is other insurance available to a claimant. In our opinion Century's attempt to distinguish Nasello and McGuire makes no difference. The inescapable conclusion of the Nasello decision is that LIGA's obligations are triggered only as a last resort.
LIGA's purpose is to provide a mechanism for the payment of covered claims and "to avoid financial loss to claimants or policy holders because of the insolvency of the insurer." La.R.S. 22:1376 "The courts of this state have interpreted the laws to protect claimants and policy holders and to advance their interests rather than the interest of the association and its members." Nasello, supra, at 1115. Thus, it can be reasonably concluded that LIGA's purpose is not to assist solvent insurers, but to protect a claimant from loss because of an insolvent insurer. Absent the existence of LIGA, Century would drop down to dollar one. The enactment of LIGA should not alter this result. To hold otherwise would be inconsistent with the intent and purpose of the statute.
We therefore affirm the trial court and hold that Century's coverage drops down to dollar one.
AFFIRMED.
NOTES
[1] Drop down coverage "occurs when an insurance carrier of a higher level of coverage is obligated to provide the coverage that the carrier of the immediately underlying level of coverage has agreed to provide." Fred Weber, Inc. v. Granite State Ins. Co., 829 S.W.2d 589, 590 n. 2 (Mo.App.1992), as cited in Louisiana Insurance Guaranty Assn. v. Interstate Fire and Casualty Co., 630 So.2d 759 (La., No. 93-C-0911, 1994).
[2] LIGA's statutory maximum at the time of this accident was $49,900.00. Currently it is $150,000.00.
[3] In Kelly, three categories of excess policies were defined. The first category hinges coverage on the "collectibility" or "recoverability" of the primary insurance. The instant case falls within that first category.