521 So.2d 579 (1988)
Charles F. THURMAN
v.
Dianne THURMAN.
No. 87 CA 1048.
Court of Appeal of Louisiana, First Circuit.
February 23, 1988.
*580 Rebecca Stafford, New Orleans, for plaintiff, appellee.
Lanny R. Zatkis, New Orleans, for defendant, appellant.
Before COVINGTON, C.J., and SAVOIE and LeBLANC, JJ.
SAVOIE, Judge.
This is a suit involving disputes arising out of a community property settlement.
Charles P. Thurman (Mr. Thurman) and Dianne M. Thurman (Mrs. Wager)[1] were married in April of 1963 in Sonora, Kentucky and subsequently established their marital domicile in St. Tammany Parish. They were later separated by judgment dated June 10, 1983, and were divorced on March 9, 1984.
As part of the separation and divorce proceedings, the parties entered into several agreements. The following two agreements were the focus of this suit:
1. A community property agreement signed on November 8, 1982.
2. An escrow agreement signed on November 8, 1982.
Four years after the signing of these documents a dispute arose between the parties concerning the meaning of certain provisions in the documents and each party's performance as related to those provisions. Specifically, Mr. Thurman alleged three breaches of the community property agreement and Mrs. Wager in response alleged thirteen breaches. This matter went to trial on August 1, 1986. On January 7, 1987, the trial court issued written reasons for judgment which expressly addressed one of the three claims raised by Mr. Thurman and three of the thirteen claims raised by Mrs. Wager. A final judgment addressing all claims was signed on January 26, 1987.[2] Mrs. Wager has appealed listing the following assignments of error:
1. The trial court erred in signing the written judgment of January 26, 1987, which was not consistent with its written reasons for judgment signed January 7, 1987.
2. The trial court erred in ordering Mrs. Wager to refund $8,232.00 to the escrow account which was previously withdrawn from the account by Mrs. Wager.
3. The trial court erred in refusing to rule on Mrs. Wager's claims for reimbursement of medical expenses, automobile maintenance and repair expenses, automobile and life insurance payments, tutoring fees, charge account payments and withheld income.

ASSIGNMENT NO. 1
Mrs. Wager claims that the trial court erred by signing the written judgment *581 of January 26, 1987, which was not consistent with its written reasons for judgment signed January 7, 1987. This argument is without merit. A final judgment can be inconsistent with the written reasons for judgment. Written reasons for judgment are considered to be interlocutory rulings and do not carry the finality of a judgment. Prior to final judgment, a trial judge may, at his discretion, change the substance or the result of interlocutory rulings. Bordelon v. Dauzat, 389 So.2d 820 (La.App. 3rd Cir.1980). If a disparity exists between the judgment and the written reasons for judgment, the final judgment is definitive. See Sanford v. Sanford, 468 So.2d 844 (La.App. 1st Cir.1985).

ASSIGNMENT NO. 2
Mrs. Wager claims that the trial court erred in ordering her to refund the $8,232.00 to the escrow account which was previously withdrawn from the account by her. The community property agreement provided for the creation of an escrow account for the purpose of payment of specific future obligations. Two obligations concerned a Bell Laboratories tax shelter entered into by the parties prior to their separation. The two obligations were payment to the tax shelter due in January of 1983 and payment of future tax liability relating to the tax shelter. The agreement also provided for the equal division of any amounts remaining in the account after the specified obligations were met. Any withdrawals from the account required the signatures of both Mr. Thurman and Mrs. Wager. The parties also entered into an escrow agreement which set forth the amounts to be escrowed for each obligation. However, the exact amounts due on the two tax shelter obligations were unknown.
The community property agreement and the escrow agreement both provided that funds were to be taken from community funds and deposited into an escrow account to fund the account.[3] On March 7, 1983 a check on the escrow account in the amount of $14,181.52 was written to Mr. Thurman. This check represented the January, 1983, payment due on the tax shelter. The check was written to Mr. Thurman because he had previously made the payment using funds from his personal savings account. This check on the escrow account was signed by both parties.
On June 17, 1983, a final settlement of the escrow account was made. The sum of $15,000.00, representing Mrs. Wager's future tax liability on the tax shelter, was subtracted from the account balance. Amounts for remaining obligations were also subtracted, leaving a balance of $33,748.44 to be divided equally. Mrs. Wager received a check for $16,874.22, which represented half of the account balance. An agreement was signed by both parties evidencing receipt of their proper shares. The $15,000.00 sum allotted for payment of future tax liability on the tax shelter was left in the escrow account in order that Mr. Thurman could make future payments. Mr. Thurman's share of the escrow account, $16,874.22, was also left in the escrow account.
On June 28, 1983, Mrs. Wager told a teller to issue a check on the escrow account, in the amount of $8,232.00, payable to Charles Thurman and Dianne Thurman. Mrs. Wager then took the check, signed her name and the name of Charles Thurman on the back of the check, and deposited the check into her personal account. Mr. Thurman was unaware of Mrs. Wager's actions until several days later when he requested return of the funds. Neither Mrs. Wager's certified public accountant or her attorney were aware of the removal of the funds from the escrow account.
Mrs. Wager took the $8,232.00 because she felt she was entitled to this amount in addition to the $16,874.22 she had already received. She arrived at the $8,232.00 figure in the following manner:

*582 1. The amount of $7,023.36 which was one half of the $14,181.52 paid in January, 1983, on the tax shelter.[4]
2. The amount of $1,000.00 placed in escrow for payment of counseling sessions.
3. The amount of $209.00 which was the estimated interest on $7,023.36.
Mrs. Wager contends that she was later informed by her accountant that she had no liability for the January, 1983, tax shelter payment. She claims she is therefore entitled to one half of that payment. Her claim is without merit. The community property agreement and the escrow agreement clearly provided for the January, 1983, payment on the tax shelter. Both agreements provided that payment on the tax shelter would be made from the escrow account. In addition, the community property agreement provided that the escrow account would be funded from community property funds. Therefore in accordance with the community property agreement, community property funds were liable for payment on the tax shelter.
Mrs. Wager evidenced her agreement to this arrangement initially by signing the community property agreement and the escrow agreement. She later evidenced her agreement to the payment of $14,181.52 by signing the check for the withdrawal. She again agreed to the $14,181.52 withdrawal by later signing a check and an agreement on June 17, 1983, as final settlement of the escrow account. No documentation or witness was presented to prove that the final settlement of the escrow account was incorrect. Mrs. Wager had no authority to withdraw $7,023.36 plus interest of $209.00 for her own use.
Mrs. Wager also withdrew $1,000.00 for counseling sessions. There is no support for her claim that she is entitled to this amount.
This assignment of error is without merit.

ASSIGNMENT NO. 3
Mrs. Wager claims that the trial court erred in refusing to rule on her claims for reimbursement of medical expenses, automobile maintenance and repair expenses, automobile and life insurance payments, tutoring fees, charge account payments and withheld income. Mrs. Wager's claim is based on the fact that the above claims were not specifically addressed in the final judgment. Issues not specifically addressed in the judgment are deemed rejected. Hendrix v. Hendrix, 457 So.2d 815 (La.App. 1st Cir.1984). It is clear that the trial court did rule on Mrs. Wager's claims by its silence in the judgment and therefore rejected such claims.
Mrs. Wager does not claim as an assignment of error the denial of her claims. However, in the listing of issues and throughout the brief, Mrs. Wager discusses the denial of claims. After a meticulous and exhaustive review of the evidence submitted, we feel that the trial court was not clearly wrong in denying the enumerated claims of Mrs. Wager as set forth in assignment of error number three.
Assignment of error number three is without merit.
For the above and foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are to be paid by Mrs. Wager.
AFFIRMED.
NOTES
[1] Mrs. Thurman remarried in July, 1984. Her new name is Mrs. Dianne Wager and she is referred to as such throughout the opinion.
[2] The final judgment specifically addressed four claims and further stated, "[a]ll other claims of either party are hereby denied."
[3] The community property agreement specifically provided that the total of $158,000 was to be deposited into an escrow account. The escrow agreement specifically provided that the total of $159,000 was to be deposited into an escrow account. The sum of $159,000 was actually deposited into the escrow account.
[4] Mrs. Wager does not dispute the $15,000.00 figure as payment for future tax liability on the tax shelter. Her dispute lies with the January 1983 tax shelter payment.