538 So.2d 1057 (1989)
Rose Petz, Wife of/and Frank GIBSON
v.
Louis F. KREIHS, et al.
No. 88-CA-0924.
Court of Appeal of Louisiana, Fourth Circuit.
January 30, 1989.
Writ Denied April 7, 1989.
*1058 William J. Wegmann, Jr., Orr Adams, Jr., New Orleans, for appellants.
Margot Mazeau, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, for appellee.
Before SCHOTT, WARD and PLOTKIN, JJ.
WARD, Judge.
This is an appeal of the trial court's ruling granting summary judgment in favor of International Insurance Company, dismissing it as a party defendant in a personal injury lawsuit. We affirm the ruling of the trial court.
For damages sustained in a three car collision, Rose Petz Gibson and her husband, Frank Donald Gibson, filed suit against Louis F. Kreihs, Buck Kreihs Company, Inc., and Transit Casualty Insurance Company, the primary automobile liability insurer of Louis F. Kreihs and Buck Kreihs Company, Inc., claiming $450,000 for injuries sustained by Mrs. Gibson through the alleged negligence of Louis F. Kreihs. Plaintiffs sued other defendants, but they are not parties to this appeal.
After Transit Casualty Insurance Company was placed in liquidation, the Gibsons amended their petition to include as defendants the Louisiana Insurance Guaranty Association[1] and International Insurance Company, an excess insurer of Buck Kreihs Company, Inc.
Because the Gibsons' suit sought damages of less than $1,000,000, the Trial Judge granted summary judgment, holding that the terms of International's policy cover Kreihs only for losses exceeding $1,000,000, regardless of the primary insurer's insolvency. The Gibsons appeal, arguing that the International Insurance Company excess policy drops down to provide coverage.
Buck Kreihs Co., Inc. purchased primary insurance from Transit Casualty for general and automobile liability coverage, in the amount of $1,000,000 for bodily injury and property damage. Buck Kreihs Co., Inc. also purchased excess insurance coverage from International Insurance, with maximum liability coverage of $9,000,000, subject to the following limitations:
*1059 V. RETAINED LIMITLIMIT OF LIABILITY
The Company's liability shall be only for the ultimate net loss in excess of the insured's retained limit defined as the greater of:
(a) The total of the applicable limits of the underlying policies listed in Schedule A hereof [$1,000,000] and the applicable limits of any other insurance collectible by the insured;
* * * * * *
The Gibsons' argument is grounded on their interpretation of the term "applicable limits" in Section V(a) above. They contend either there are no applicable limits because there is no underlying policy since Transit Casualty is insolvent or that Section V(a) refers only to the "applicable limits" of LIGA's statutory liability. Moreover, they maintain that the terms of the policy are vague and ambiguous, and should be construed against International Insurance and in favor of providing "drop down" coverage by International.
To support this argument, the Gibsons rely on McGuire v. Davis Truck Services, et al, 518 So.2d 1171 (La.App. 5th Cir.1988), writ denied 526 So.2d 791 (La.1988). In that case the Court found the wording "amount recoverable" in the limit of liability clause of the policy ambiguous. The Court equated the words "amount recoverable" with "collectible", and concluded that LIGA assumed the position of the insolvent primary carrier and that the excess carrier "dropped down" to cover losses in excess of LIGA's statutory limits.
If the insured purchases the required underlying insurance policy, but the primary insurer becomes insolvent, whether the excess insurer is liable only for the amount of the claim in excess of the retained limits or whether its coverage drops down to that of the primary insurer is determined by the words of the excess policy. See Nasello v. Transit Casualty Company, 530 So.2d 1114 (La.1988) holding coverage dropped down because excess insurance coverage was over any other collectible insurance.
In this case International's policy in Section V(a) defines the limits of liability and provides that International is liable only for the ultimate net loss in excess of the applicable limits of the Transit Casualty policy listed in Schedule A of International's policy as $1,000,000. In Schedule A under the column "Applicable Limits" appears:
Bodily Injury and Property Damage Combined Single Limit $1,000,000.00 each occurance.
Under the column "Insurer" appears:
Transit Casualty Co.
The meaning of "applicable limits" is clear, not ambiguous; it refers to a loss in excess of the $1,000,000 coverage provided by Transit Casualty.
Finally, International's excess policy provides for the contingency of the insolvency of the primary insurer in that part entitled "conditions" Section "O".
O. Maintenance of Underlying Insurance. It is warranted by the insured that the underlying policies listed in Schedule A, or renewals or replacements thereof not more restricted, shall be maintained in force during the currency of this policy, except for any reduction of aggregate limits contained therein solely by payment of claims in respect of occurrences happening during this policy period. In the event of failure by the insured to so maintain such policies in force or to meet all conditions and warranties subsequent to loss under such policies the insurance afforded by this policy shall apply in the same manner it would have applied had such policies been so maintained in force.

In the event there is no recovery available to the insured as a result of the bankruptcy or insolvency of the underlying insurer, the coverage hereunder shall apply in excess of the applicable limit of liability specified in Schedule A. (Emphasis added)
The Court in McGuire noted:
The excess carrier, who is responsible for the policy language, can rewrite its own policy to make clear any intent that its *1060 coverage will not drop down when the primary insurer becomes insolvent.
518 So.2d 1171, 1174.
Unquestionably, by the second paragraph of Section "O" above, International Insurance indicated its coverage does not drop down in the event of primary insurer insolvency.
The Trial Court was correct in determining there is no genuine issue of fact in dispute. International Insurance does not "drop down" to provide coverage for claims less than $1,000,000.
AFFIRMED.
NOTES
[1] LIGA was named as a defendant pursuant to R.S. 22:1375, et seq. LIGA is the administrator of the legislatively enacted Insurance Guaranty Fund. The purpose of the fund is "to provide a mechanism for the payment of covered claims... and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer ..." R.S. 22:1376. Although LIGA's statutory limit of liability which may be $50,000 or $150,000 has not yet been determined, that issue is not now before the Court.