551 So.2d 50 (1989)
LOUISIANA INSURANCE GUARANTY ASSOCIATION
v.
INTERNATIONAL INSURANCE COMPANY and Hudson Insurance Company.
No. CA 88 1101.
Court of Appeals of Louisiana, First Circuit.
October 11, 1989.
Rehearing Denied November 17, 1989.
*51 Henry G. Terhoeve, Baton Rouge, for plaintiff-appellant, Louisiana Ins. Guar. Ass'n.
Wood Brown, III, New Orleans, for defendants-appellees, Intern. Ins. Co., et al.
Before LOTTINGER, CRAIN and LeBLANC, JJ.
LOTTINGER, Judge.
Plaintiff, Louisiana Insurance Guaranty Association (LIGA), filed a declaratory judgment action against defendants, International Insurance Company (International) and Hudson Insurance Company, seeking a declaration of rights. This controversy arises out of the insolvency of Transit Casualty Company, a primary insurer of Howard Trucking Company, Inc. Both sides filed motions for summary judgment. From judgment granting defendants' motions for summary judgment dismissing LIGA's petition, LIGA appeals.

FACTS
Howard Trucking Company, Inc. had several policies of insurance issued by Transit Casualty Company for the period of July 1, 1984, to July 1, 1985. The defendant, International, issued an excess policy to Howard Trucking Company, Inc. for the same period of time.
LIGA's petition alleges:
"On December 3, 1985, Transit Casualty Company was declared insolvent. The Louisiana Insurance Guaranty Association now seeks a judgment of this Court declaring that under LSA-R.S. 22:1386, the Louisiana Insurance Guaranty Association is intended to be an insurer of last resort, and that any recovery from the Louisiana Insurance Guaranty Association should be secondary to coverage under a viable policy of insurance issued by a solvent insurer.
....
"Accordingly, Petitioner seeks a judgment of this court declaring that the insurance policies issued by Hudson Insurance Company and International Insurance Company, defendants herein:
a) constitute `other' policies as set forth under LSA-R.S. 22:1386 and
b) that this coverage `drops down' when the primary insurer is declared insolvent under the language of the defendant's (sic) policies
providing primary and first coverage, before any responsibility or coverage is with the Louisiana Insurance Guaranty Association."

TRIAL COURT
In oral reasons for judgment, the trial court concluded that LIGA must provide coverage for the first $150,000.00, and that International would "drop down" to provide coverage above $150,000.00. However, in the signed judgment, the trial court merely granted defendants' motions for summary judgment and dismissed LIGA's petition. Any disparity existing between the reasons for judgment and the judgment is controlled by the judgment. Thurman v. Thurman, 521 So.2d 579 (La.App. 1st Cir.1988).

ASSIGNMENT OF ERROR
In appealing LIGA contends the trial court was correct in concluding the International policy "dropped down," but erred in concluding that it did not provide primary coverage in lieu of the statutory coverage of LIGA of $149,900.00. La.R.S. 22:1382(1)(a). The issue before the court is whether the trial court was correct in concluding that LIGA provided primary coverage to the extent of its statutory authority.

I
In Gibson v. Kreihs, 538 So.2d 1057, 1059 (La.App. 4th Cir.), writ denied, 541 *52 So.2d 856 (La. 1989), our brethren on the Fourth Circuit Court of Appeal held:
"If the insured purchases the required underlying insurance policy, but the primary insurer becomes insolvent, whether the excess insurer is liable only for the amount of the claim in excess of the retained limits or whether its coverage drops down to that of the primary insurer is determined by the words of the excess policy. See Nasello v. Transit Casualty Company, 530 So.2d 1114 (La. 1988) holding coverage dropped down because excess insurance coverage was over any other collectible insurance."
The International policy in question in this case provides at Section V:
"The Company's liability shall be only for the ultimate net loss in excess of the insured's retained limit defined as the greater of:
(a) the total of the applicable limits of the underlying policies listed in Schedule A hereof, and the applicable limits of any other insurance collectible by the insured; or
(b) the self-insured retention stated in Item 4(c) of the declarations as the result of all occurrences not covered by said underlying insurance, and which shall be borne by the insured, separately as respects each annual period of this policy."
As in Gibson v. Kreihs, the instant policy provides under Condition 0:
"O. Maintenance of Underlying Insurance. It is warranted by the insured that the underlying policies listed in Schedule A, or renewals or replacements thereof not more restricted, shall be maintained in force during the currency of this policy, except for any reduction of aggregate limits contained therein solely by payment of claims in respect of occurrences happening during this policy period. In the event of failure by the insured to so maintain such policies in force or to meet all conditions and warranties subsequent to loss under such policies the insurance afforded by this policy shall apply in the same manner it would have applied had such policies been so maintained in force.
"In the event there is no recovery available to the insured as a result of the bankruptcy or insolvency of the underlying insurer, the coverage hereunder shall apply in excess of the applicable limit of liability specified in Schedule A."
(Emphasis added.)
For the reasons assigned by the Fourth Circuit in Gibson v. Kreihs, we conclude the trial court was correct.
Therefore, the judgment of the trial court is affirmed at LIGA's costs.
AFFIRMED.