ATTORNEY DISCIPLINARY PROCEEDINGS
hPER CURIAM.
This disciplinary matter arises from six counts of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Barry E. Edwards, an attorney licensed to practice law in Louisiana, but currently on suspension.
PRIOR DISCIPLINARY RECORD
Before addressing the instant charges, a review of respondent’s prior disciplinary history is helpful. On June 13, 1997, this court placed respondent on interim suspension based on a felony drug conviction and ordered disciplinary proceedings to be instituted. In re: Edwards, 97-0624 (La.6/13/97), 695 So.2d 1325 (“Edwards I”).
The ODC filed formal charges based on respondent’s conviction and other professional misconduct. After proceedings, the disciplinary board recommended respondent be disciplined. On December 17, 1999, this court suspended respondent for a period of three years, retroactive to the date of his interim suspension, followed by a two-year period of supervised probation, based upon misconduct involving his substance abuse conviction, failure to return unearned fees, failure to act with diligence and failure to cooperate in disciplinary proceedings. In re: Edwards, 99-1783 (La.12/17/99), 752 So.2d 801 (“Edwards II”). Although respondent has been eligible to seek reinstatement from this suspension as of June 13, 2000, he has not done so.
| .FORMAL CHARGES
Count I — Everett Matter
The ODC alleges that, sometime in September 1996, Billy R. Everett retained respondent for $2,500 to represent him in the criminal proceedings stemming from an arrest for aggravated battery. It claims, although respondent enrolled as counsel of record for Mr. Everett on December 16, 1996, respondent failed to attend any scheduled court appearances on behalf of Mr. Everett and failed to communicate with him. On January 22,1997, less than five weeks after respondent enrolled as counsel, Mr. Everett filed a motion *168 seeking to have respondent removed as his counsel.
Based on these facts, the ODC alleges respondent’s conduct violates Rules 1.3 (lack of diligence), 1.4 (failure to communicate), 1.5 (failure to account for and refund unearned fees), Rule 1.15 (failure to safeguard client property), 1.16(d) (failure to protect client interests upon termination of representation), 8.4(a) (violating or attempting to violate the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation) and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.
Count II — Guiden Matter
The ODC alleges that, on June 16, 1997, Michael Guiden retained respondent for $2,500. Mr. Guiden, who had pled guilty to distribution of drugs and had been sentenced to five years incarceration, sought to withdraw his guilty plea and to obtain a lesser sentence of probation. It claims respondent performed little or no work on Mr. Guiden’s behalf, failed to inform him he had been suspended on June 13, 1997 by |3order of this court in Edwards I, failed to account for his fee and failed to refund the unearned portion of the fee.
Based on these facts, the ODC alleges respondent’s conduct violates Rules 1.3 (lack of diligence), 1.4 (failure to communicate), 1.5 (failure to account for and refund unearned fees), 1.15 (failure to safeguard client property), 1.16(d) (failure to protect client interests upon termination of representation), 8.4(a) (violating or attempting to violate the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation) and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.
Count III — Brown Matter
The ODC alleges that, on or about July 1, 1997, Jesse Brown paid respondent $2,000 in cash to represent Mr. Brown’s brother, D arrien Brown, in criminal proceedings.[1] It claims, at the time respondent accepted the- representation, he had been on interim suspension in Edwards I since June 13, 1997 and notice of this interim suspension had been published in respondent’s local newspaper on June 25, 1997. According to the ODC, respondent failed to advise Mr. Brown of his suspension, performed little or no work on his client’s behalf, failed to account for his fee or refund the unearned portion of his fee.
The ODC alleges respondent’s conduct violates Rules 1.1 (incompetence), 1.3 (lack of diligence), 1.4 (failure to communicate), 1.5 (failure to account for and refund unearned fees), 1.15 (failure to safeguard client property), 1.16(d) (failure to protect client interests upon termination of representation), 8.4(a) (violating or attempting to ^violate the Rules of Professional Conduct), 8.4(b) (commission of a criminal act adversely reflecting on a lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation) and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.
Count IV — Hill Matter
The ODC alleges that, on June 25, 1997, Alma Hill paid respondent $700 of a $2,000 fee to represent her daughter, Monica Hill, in a criminal matter. It claims, after receiving the fee, respondent did little or *169 nothing on his client’s behalf and abandoned her. Further, the ODC asserts respondent failed to communicate with Ms. Hill or his client, failed to inform them of his interim suspension in Edwards I, failed to account for his fee and failed to return the unearned portion of the fee.
The ODC alleges respondent’s conduct violates Rules 1.4 (failure to communicate), 1.5 (failure to account for and refund unearned fees), 1.15 (failure to safeguard client property; i.e., commingling and conversion), 1.16(d) (failure to protect client interests upon termination of representation), 8.4(a) (violating or attempting to violate the Rules of Professional Conduct), 8.4(b) (commission of a criminal act adversely reflecting on a lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation) and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of the Professional Conduct.
1 fPount V — Giles Matter
The ODC alleges that, in February 1997, Frederick D. Giles paid respondent $1,000 to represent him in criminal proceedings. Respondent enrolled as Mr. Giles’ counsel of record. Subsequently, on June 1, 1997, respondent was placed on interim suspension in Edwards I. Further, the ODC claims respondent failed to advise Mr. Giles of the interim suspension, failed to appear at court on his behalf, failed to account for his fee and failed to return the unearned portion of his fee.
The ODC alleges respondent’s conduct violates Rules 1.4 (failure to communicate), 1.5 (failure to account for and refund unearned fees), 1.15 (failure to safeguard client property), 1.16(d) (failure to protect client interests upon termination of representation), 8.4(a) (violating or attempting to violate the Rules of Professional Conduct) and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.
Count VI — Failure to Cooperate Matters
The ODC alleges that, in each of the matters charged in Counts I through V, the ODC forwarded copies of the complaints to respondent by certified mail and asked that he address the allegations made by the complainants. Respondent failed to reply to this request. As a result, the ODC alleges it was required to issue a subpoena compelling respondent’s appearance and production of documents at a scheduled deposition. The ODC recognizes respondent eventually appeared on October 21,1997 to give a sworn statement in these matters.
The ODC alleges respondent’s actions violates Rules 8.1 and 8.4(g) of the Rules of Professional Conduct, which set forth the obligation of an attorney to cooperate in a disciplinary investigation.
I fiFACTUAL FINDINGS AND RECOMMENDATION OF THE HEARING COMMITTEE
After the ODC instituted formal charges, respondent filed an answer denying the misconduct and the matter proceeded to a formal hearing before the committee.[2] Respondent appeared at the hearing and was represented by counsel. The ODC presented testimony from the complainants, as well as documentary evi *170 dence. Respondent testified on his own behalf and called witnesses.
"In the Everett matter, the committee found respondent received a fee of $2,500 on behalf of Mr. Everett. After receiving the fee, respondent made one court appearance on behalf of Mr. Everett, made no filings whatsoever on his behalf and was discharged several weeks later. The committee found respondent made no effort to refund the unearned fee at the time of his discharge, although he testified a refund was made at a later date. The committee also determined that respondent failed to reply to the ODC’s request for information concerning Mr. Everett’s complaint.
Regarding the Guiden matter, the committee determined respondent received a fee of $2,500 to perform certain criminal work for Mr. Guiden, but performed little or no work and did not refund the unearned portion of the fee. The committee rejected respondent’s testimony that he earned the fee by spending over twenty hours reviewing the record, finding this testimony was not credible. The committee also found respondent failed to reply to the ODC’s letter requesting information about Mr. Guiden’s complaint.
|7As to the Brown matter, the committee determined respondent received a fee in the sum of $2,000, did little or no work on behalf of his client and failed to refund the unearned portion of the fee he received.[3] The committee further made a finding of fact, based on testimony from Jessie Brown, Jr., that respondent received the fee on July 1, 1997, after respondent received notice of his interim suspension in Edwards 7.[4] Additionally, it found he failed to respond to the ODC’s requests for information.
In the Hill matter, the committee found respondent received $700 of a $2,000 fee, did little or no work for his client and failed to refund the unearned portion of his fee. The committee also found respondent failed to notify his client that he had been suspended from the practice of law and failed to respond to the ODC’s request for information about the complaint.
As to the Giles matter, the committee found respondent received a fee in the amount of $1,000 from Mr. Giles. It determined he made two appearances in the matter, namely, one to enroll as counsel and one to waive the preliminary examination and enter a plea of not guilty on behalf of Mr. Giles. It found respondent made no effort to refund the unearned portion of the fee to Mr. Giles, nor did he respond to the letter from the ODC requesting information about the complaint. However, it concluded respondent notified Mr. Giles of his suspension from the practice of law.
In determining an appropriate sanction, the committee discussed the issue of whether respondent made restitution to his clients. The committee observed respondent made no restitution in the Hill and Giles matters. It found there was [ ¿‘uncorroborated testimony” from respondent that he returned some or all of the fee in the Everett and Guiden matters and had refunded the fee in the Brown matter the week prior to the hearing. However, *171 the committee gave little weight to the payment of restitution, concluding the refunds of the fees “were prompted not by a sense of duty on part of the respondent but rather he was responding to the pressure of the disciplinary proceeding.”
It found respondent’s decision to accept representation of thé Brown matter on July 1, 1997, eighteen days after he had been placed on interim suspension in Edwards I, constituted “egregious misconduct.” Additionally, the committee found respondent’s misconduct demonstrated a pattern of misconduct, which the committee found disturbing in light of his prior disciplinary record.
The only mitigating factor found by the committee was that respondent suffered from “certain personal difficulties” during the time frame of the misconduct. However, the committee did not elaborate on the nature of these “personal difficulties.”
Based on its consideration of the case, the committee recommended that respondent be disbarred from the practice of law.
RECOMMENDATION OF THE DISCIPLINARY BOARD
The disciplinary board found most of the hearing committee’s factual findings were supported by the record. However, it determined the committee’s conclusion that respondent failed to make restitution in the Giles matter was manifestly erroneous. In support, the board relied on respondent’s testimony that he refunded $500 to Mr. Giles prior to the hearing, and the fact his statement was not challenged by the ODC during its cross-examination of respondent.
|9The board also found no error in the legal conclusions of the committee.[5] It pointed out the hearing committee did not find specific violations of the Rules of Professional Conduct. However, it concluded the committee’s findings supported a violation of Rule 1.3, based on respondent’s lack of diligence in the Everett, Guiden, Brown and Hill matters. The board also found he failed to communicate with his clients in the Guiden, Brown, Hill and Giles matters in violation of Rule 1.4, as he failed to advise them of his suspension. It determined respondent’s failure to provide any meaningful services for his clients in the Brown and Hill matters demonstrated he lacked competence, in violation of Rule 1.1. The board asserted respondent violated Rule 1.5(f)(6) and Rule 1.16(d) by failing to return the unearned fees until after disciplinary proceedings had been commenced. It concluded his practice of law while suspended constituted a criminal act in violation of Rule 8.4(b).[6] The board noted respondent’s acts as a whole constituted dishonest or deceitful conduct and conduct prejudicial to the administration of justice under Rule 8.4(c) and (d). Finally, it recognized respondent’s failure to cooperate violated Rules 8.1 and 8.4(g).
Addressing the issue of sanctions, the board determined that respondent’s conduct was knowing and intentional, and that he violated duties owed to his clients, the profession, the public and the legal system. It noted that respondent delayed his *172 clients’ legal matters by repeatedly failing to perform legal services for them. The board also recognized that respondent deprived his clients of their funds for substantial periods of time, and had still not made restitution to Alma Hill.
|inAs aggravating factors, the board recognized respondent’s prior disciplinary record, dishonest or selfish motive, pattern of misconduct, bad faith obstruction of the disciplinary process by intentionally failing to comply with the rules or orders of a disciplinary authority, refusal to acknowledge wrongful nature of misconduct, vulnerability of the victims and substantial experience in the practice of law.[7] In mitigation, the board acknowledged the death of respondent’s mother and his problems with his son. However, without citing reasons, it declined to recognize his problems stemming from his criminal charges and financial difficulties.
Relying on the ABA’s Standards for Imposing Lawyer Sanctions and jurisprudence from this court, the board recommended respondent be disbarred from the practice of law. Further, it proposed respondent make restitution in the Hill matter and provide accountings to those clients who did not receive full refunds. One board member filed a concurrence.
Respondent filed an objection to the recommendation of the disciplinary board. Accordingly, the matter was docketed for briefing and argument in accordance with Supreme Court Rule XIX, § 11(G).
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the Inhearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The record supports the hearing committee’s factual findings that respondent neglected his clients’ legal matters, failed to communicate with his clients, failed to account for and refund the unearned fees in a timely fashion and failed to cooperate with the ODC. Additionally, we find respondent engaged in the unauthorized practice of law by accepting representation in the Brown matter after he had notice he had been placed on interim suspension in Edwards I.
Having found professional misconduct, we now turn to a discussion of the appropriate discipline. We are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 518 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
As stated earlier, in Edwards II, we suspended respondent for a period of three years, which was made retroactive to *173 the June 13, 1997 interim suspension imposed in Edwards I. The instant charges arise in the same general time frame as the misconduct which formed the basis for Edwards II. In Louisiana State Bar Ass’n v. Chatelain, 573 So.2d 470 (La.1991), we explained that, when a second disciplinary proceeding against an attorney involves misconduct which occurred during the same |12time period as the first proceeding, the overall discipline to be imposed should be determined as if both proceedings were before the court simultaneously.[8]
Had the instant misconduct been considered together with the misconduct at issue in Edwards II, it is likely that we would have disbarred respondent. However, the difficulty of applying the Chatelain approach is readily apparent under the facts of this case. It is logically impossible for us to impose a “retroactive” disbarment on respondent, especially considering respondent has served his suspension in Edwards II and has been eligible to seek reinstatement from that suspension since June 13, 2000. On the other hand, imposing a “new” disbarment on respondent at this time would be offensive to the principles of Chatelain, as it would expose respondent to a greater sanction based on the timing of the ODC’s filing of formal charges.[9]
Under these unique circumstances, we must fashion a sanction which is responsive to the instant misconduct, giving due consideration to the fact that respondent should hot be unfairly penalized due to the timing of the filing of the formal charges. We conclude the appropriate sanction is a three-year suspension from the practice of law. Two years of this suspension shall run concurrent to the suspension |13imposed in Edwards II and one year shall run consecutively to the suspension imposed in Edwards II, to commence upon the finality of the instant judgment.[10]
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Barry E. Edwards, Louisiana Bar Roll number 5281, be suspended from the practice of law for a period of three years. Two years of this suspension shall run concurrently to the suspension imposed in In re: Edwards, 99-1783 (La.12/17/99), 752 So.2d 801, and one year *174 shall run consecutively, to commence upon finality of the judgment rendered this day. It is further ordered that respondent shall render accountings to his clients and refund any unearned fees due to them. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Respondent maintains Mr. Brown retained him on June 1, 1997, rather than July 1, 1997. However, the hearing committee made a finding of fact, based on Mr. Brown’s bank records, that respondent was retained on July 1, 1997.

. Prior to a formal hearing in the case, respondent filed a petition for consent discipline, admitting he engaged in the alleged misconduct. For his misconduct, respondent proposed a two-year suspension, with fifteen months deferred, followed by a two-year period of probation. This court rejected the petition for consent discipline. In re: Edwards, 00-1751 (La.8/31/00), 766 So.2d 1269. Accordingly, the matter proceeded to a formal hearing.

. The committee indicated it was "concerned” that the complainant in this matter was Jessie Brown, rather than the client, Dar-rien Brown.

. Respondent maintained he received the fee on June 1, 1997, prior to receiving notice of his suspension on June 25, 1997. However, Mr. Brown testified he retained respondent on July 1, 1997. In support of Mr. Brown's testimony, the ODC produced bank records reflecting that Mr. Brown withdrew $2,000 on July 1, 1997.

. The board discussed the committee’s concern that the complaint in the Brown matter was made by Jesse Brown Jr. rather than the client, Darrien Brown. See note 3, supra. The board found the Rules of Professional Conduct provided several instances where a client could have a professional obligation to a person other than the client. The board also suggested that fairness dictated that Jesse Brown, the person who paid the fee, would be entitled to the refund when the representation ended prematurely.

. The board observed that La. R.S. 37:213 made the unauthorized practice of law a criminal offense.

. Respondent was admitted to the practice of law in 1974.

. In Louisiana State Bar Ass’n v. Chatelain, 573 So.2d 470 (La.1991), we declined to impose an additional disbarment on a previously-disbarred attorney based on conduct which occurred during the same time frame as the earlier disbarment. We observed:
Since the attorney-respondent cannot control the timing of the institution of disciplinary proceedings, it is generally inappropriate to disbar a previously disbarred attorney an additional time when the violations at issue occurred before or concurrently with the violations which resulted in the initial disbarment. When a second disciplinary proceeding against an attorney involves misconduct which occurred during the same time period as the first proceeding, the overall discipline to be imposed should be determined as if both proceedings were before the court simultaneously. See 1 Lawyers’ Manual on Professional Conduct 466 (1984); Matter of Thompson, 492 A.2d 866 (D.C.App.1985).

. While we ascribe no improper motive to the ODC with regard to the timing of the filing of the formal charges, we observe that the underlying facts of the instant charges should have been known to the ODC during the time Edwards II was pending. In support, we note that respondent gave his sworn statement in the instant case in October 1997. Approximately five months later, in March 1998, the ODC amended its formal charges in Edwards II.

. The effect of our judgment is that respondent must serve a one-year actual suspension prior to seeking reinstatement from the suspension imposed in Edwards II.