*887
 
 ATTORNEY DISCIPLINARY PROCEEDINGS
 

 PER CURIAM.
 

 | ¾ This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Karen J. Cooper, an attorney licensed to practice law in Louisiana.
 

 FORMAL CHARGES
 

 06-DB-060
 

 Count I
 
 — The
 
 Majeau Matter
 

 On June 7, 2004, Heather Majeau hired respondent to represent her in divorce and child custody proceedings, paying $2,000 towards respondent’s $4,000 fee. On June 14, 2004, respondent filed a petition for divorce on Ms. Majeau’s behalf in Civil District Court for the Parish of Orleans, stating that Ms. Majeau was domiciled in Orleans Parish when she was in fact domiciled in Jefferson Parish. Respondent also failed to include the required verification affidavit and failed to request service of the petition on Ms. Majeau’s husband. Respondent further requested the issuance of an
 
 ex parte
 
 provisional custody order. In response to these filings, the attorney for Ms. Majeau’s husband filed exceptions based on improper venue and failure to comply with statutory requirements. In the meantime, on June 21, 2004, Ms. Ma-jeau’s husband filed a petition for divorce in the Twenty-Fourth Judicial District Court for the Parish of Jefferson. Although respondent filed a motion for provisional custody 12on Ms. Majeau’s behalf in the Twenty-Fourth Judicial District Court proceeding, she failed to respond to numerous phone calls from Ms. Majeau and failed to keep her advised of the status of her case. When Ms. Majeau obtained new counsel, respondent agreed to provide Ms. Majeau with a refund of the legal fee she paid. However, respondent failed to do so.
 

 In September 2004, Ms. Majeau filed a disciplinary complaint against respondent, who failed to respond to the complaint. Respondent also failed to appear to give a sworn statement to the ODC, despite being personally served with a subpoena.
 

 The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1(a) (failure to provide competent representation to a client), 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5(f)(5) (failure to refund an unearned fee), 1.16(d) (obligations upon termination of the representation), 3.4(c) (knowing disobedience of an obligation under the rules of a tribunal), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
 

 Count II
 
 — The
 
 Cantey Estate Matter
 

 On December 4, 2001, Edith Cantey passed away. On December 21, 2001, her
 
 *888
 
 heirs (seventeen nieces and nephews) hired respondent to handle the succession. Respondent was instructed to sell Ms. Canters house, which was sold on July 19, 2002. However, respondent failed to inform the heirs of the sale. Via a December 5, 2002 email, respondent provided Mable Burks, one of the heirs, with an accounting |3of succession debts and a proposed distribution to the heirs.
 
 [1]
 
 Nonetheless, respondent failed to complete the distribution of the succession proceeds or account for the funds. On September 16, 2004, Arxavia Godfrey, another heir, requested a status update from respondent. Respondent did not reply to Ms. Godfrey or to the heirs’ numerous other requests for information.
 

 In November 2004, Ms. Godfrey filed a disciplinary complaint against respondent, who failed to respond to the complaint. Respondent also failed to appear to give a sworn statement to the ODC, despite being personally served with a subpoena.
 

 The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.15(d) (failure to timely remit funds to a client or third person), 1.15(e) (a lawyer in possession of property in which two or more persons claim interests shall keep the property separate until the dispute is resolved), 1.16(d), 3.4(c), 8.1(c), 8.4(a), 8.4(c), and 8.4(d).
 

 Count III
 
 — The
 
 Jefferson Matter
 

 On January 6, 2005, Ronald Jefferson hired respondent to assist him in collecting unpaid child support from his ex-wife. Mr. Jefferson paid respondent $410 for a consultation and to attend a hearing in the matter. Respondent failed to appear at the February 15, 2005 hearing, which had to be continued to March 14, 2005. Respondent also failed to appear at the March 14, 2005 hearing, necessitating another continuance. Mr. Jefferson called respondent numerous times, but she did not return the calls or provide him with an explanation for her failure to appear in court on his behalf. Thereafter, her phone number was disconnected, and she closed her office |4without notifying Mr. Jefferson. Respondent failed to provide Mr. Jefferson with an accounting or a refund of the unearned portion of the fee. Accordingly, Mr. Jefferson filed a claim with the Client Assistance Fund of the Louisiana State Bar Association (LSBA), seeking recovery of the $410.
 

 On March 29, 2005, Mr. Jefferson filed a disciplinary complaint against respondent, who failed to respond to the complaint. Respondent also failed to appear to give a sworn statement to the ODC, despite being personally served with a subpoena.
 

 The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5), 1.15(d), 1.15(e), 3.4(c), 8.1(c), 8.4(a), and 8.4(d).
 

 Count TV
 
 — The
 
 Forbs Matter
 

 On August 4, 2004, Verna Forbs consulted respondent about a real estate loan she obtained from First Horizon Home Loan Corporation on February 17, 2004.
 
 [2]
 
 In September 2004, First Horizon sued Ms. Forbs, and she was served with the lawsuit on October 1, 2004. On October 5, 2004, Ms. Forbs signed a fee agreement with respondent to represent her in the lawsuit, paying respondent $1,500. Thereafter, respondent took no action on Ms. Forbs’ behalf and failed to respond to Ms. Forbs’ requests for status updates. Accordingly,
 
 *889
 
 via letter dated December 21, 2004, Ms. Forbs terminated respondent’s services and requested a full refund. Respondent did not return Ms. Forbs’ file, did not provide her with an accounting, and did not refund the unearned fee.
 

 |Jn January 2005, Ms. Forbs filed a disciplinary complaint against respondent, who failed to respond to the complaint. Respondent also failed to appear to give a sworn statement to the ODC, despite being personally served with a subpoena.
 

 The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5), 1.16(d), 3.2 (failure to make reasonable efforts to expedite litigation), 3.4(c), 8.1(c), 8.4(a), 8.4(c), and 8.4(d).
 

 Count V
 
 — The
 
 Bar Registration Matter
 

 In early 2006, respondent relocated to Phoenix, Arizona and began working with the law firm of Gust Rosenfeld, P.L.C. However, she did not report her change of address to the LSBA.
 

 The ODC alleged that by failing to update her primary registration statement address, respondent has violated Supreme Court Rule XIX, § 8(C).
 

 Count VI
 
 — The
 
 Williams Matter
 

 On June 6, 2005, Chriscynthia Williams hired respondent to handle her divorce, paying respondent $961. Thereafter, respondent canceled two appointments with Ms. Williams and failed to file Ms. Williams’ petition for divorce. She also failed to respond to Ms. Williams’ numerous requests to proceed with the divorce. Ms. Williams subsequently hired another attorney, who filed the petition for divorce on April 24, 2006. Respondent did not provide Ms. Williams with an accounting or refund the unearned fee.
 

 Lin April 2006, Ms. Williams filed a disciplinary complaint against respondent, who failed to respond to the complaint. Thereafter, respondent relocated to Arizona without notifying Ms. Williams or the LSBA.
 

 The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5), 1.16(d), 8.1(c), 8.4(a), and 8.4(c). The ODC also alleged that by failing to update her primary registration statement address, respondent has violated Supreme Court Rule XIX, § 8(C).
 

 08-DB-0S8
 

 Count I
 
 — The
 
 Divorce Proceedings Matter
 

 While respondent was in the process of obtaining a divorce from Richard Cooper, she engaged in the following misconduct:
 

 Respondent’s husband was the sole owner of and held the title to a 1996 Mercedes S420. In June 2004, respondent, without her husband’s knowledge or consent, signed his name to documents transferring the vehicle’s title to Benson Motor Company.
 

 Respondent and her husband maintained a joint bank account. On March 12, 2004, respondent issued a $62,000 check from the joint account made payable to Precise Title, LLC,
 
 [3]
 
 and the proceeds were deposited into Precise Title’s escrow account. Also on March 12, 2004, respondent issued a $2,746.47 check from the joint account made payable to Precise Title. That same day, respondent issued a $65,746.47 check from Precise Title’s escrow account made payable to her hus
 
 *890
 
 band, and the proceeds were deposited into the joint account.
 

 |7A Precise Title escrow account check in the amount of $119,030.66 was dishonored on September 10, 2004 and again on September 20, 2004 because of insufficient funds in the account. During September 2004, numerous other checks from Precise Title’s escrow account were dishonored because of insufficient funds in the account.
 

 In February 2006, the Jefferson Parish District Attorney’s Office notified the ODC of the above actions by respondent. In September 2006, the ODC sent notice of the alleged misconduct to respondent at her place of employment in Arizona. Respondent did not respond to the ODC.
 

 The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15(a) (safekeeping property of clients or third persons), 8.1(c), 8.4(a), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c), and 8.4(d).
 

 Count II
 
 — The
 
 Kalantari Matter
 

 On June 2, 2005, Mary Kimball Kalan-tari hired respondent to handle her divorce, paying her $5,000. On June 10, 2005, Ms. Kalantari gave respondent $10,000 in cash for safekeeping. That same day, respondent deposited the cash into her office checking account. On June 30, 2005, respondent’s office account had a negative balance of $147.10, and the records for the account through December 2007 indicated a balance well below Ms. Kalantari’s $10,000.
 

 In late 2005, Ms. Kalantari reconciled with her husband and, thus, requested that respondent terminate the divorce proceedings. By that time, respondent had relocated out of state. She informed Ms. Ka-lantari that she would meet with her when |sshe next visited the New Orleans area; however, she failed to do so. Throughout 2006 and 2007, Ms. Kalantari called respondent numerous times but was unable to contact her. As such, she hired another attorney, who sent respondent a demand letter dated August 24, 2007, requesting the return of Ms. Kalantari’s $10,000.
 

 In November 2007, Ms. Kalantari filed a disciplinary complaint against respondent. Because respondent did not update her address with the LSBA, the ODC was unable to serve her with the complaint.
 

 The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5), 1.15(a)(e)(e)(f) (safekeeping property of clients or third persons), 1.16(a)(3) (a lawyer shall withdraw from the representation of a client if the lawyer is discharged), 1.16(d), 8.1(c), 8.4(a), 8.4(b), 8.4(c), and 8.4(d).
 

 DISCIPLINARY PROCEEDINGS
 

 On October 19, 2006, the ODC filed the formal charges in 06-DB-060. The ODC amended the formal charges on November 3, 2006. On April 10, 2008, the ODC filed the formal charges in 08-DB-038. Respondent failed to answer both sets of formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3).
 

 The two matters were consolidated by order of the hearing committee chair. No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the committee’s consideration.
 

 
 *891
 
 |
 
 ¡¡Hearing Committee Report
 

 After considering the ODC’s deemed admitted submissions in these consolidated matters, the hearing committee found that the factual allegations of the formal charges are deemed admitted and proven by clear and convincing evidence. Specifically, the committee found that respondent filed Ms. Majeau’s divorce in an improper venue, failed to attach the proper verification affidavit to the divorce petition, and failed to promptly serve Ms. Majeau’s husband. Additionally, the committee found that respondent neglected her clients’ cases, relocated several times without notice to clients, failed to properly withdraw from representations, failed to respond to numerous requests for information, failed to refund unearned fees, failed to resolve fee disputes, failed to safeguard client funds, commingled and/or converted client and/or third-party funds, failed to account for funds, misused her escrow account, abandoned her clients, failed to file responsive pleadings on behalf of clients, failed to cooperate with the ODC in its investigations, committed numerous criminal acts, including forgery and check kiting, and failed to update her bar registration information.
 

 Based on these facts, the committee determined that respondent violated Rules 1.1(a), 1.3, 1.4, 1.5(f), 1.15, 1.16, 3.2, 3.4(c), 8.1(c), 8.4(a), 8.4(c), and 8.4(d) of the Rules of Professional Conduct,
 
 [4]
 
 as well as Supreme Court Rule XIX, § 8(C).
 

 The committee determined that respondent knowingly and intentionally violated duties owed to her clients, the public, and the legal profession. Her dishonesty and lack of professionalism erodes the public’s trust and confidence in the | 10legal profession and the legal system. Relying on the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the committee determined that the baseline sanction is disbarment.
 

 The committee found the following aggravating factors: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, vulnerability of the victims, and indifference to making restitution. The sole mitigating factor found by the committee is the absence of a prior disciplinary record.
 

 Under these circumstances and considering this court’s prior jurisprudence involving similar misconduct, the committee recommended that respondent be disbarred. The committee further recommended that respondent provide complete accountings and restitution to her victims and repay the Louisiana State Bar Association’s Client Assistance Fund for any funds paid to her victims.
 

 Neither respondent nor the ODC filed an objection to the hearing committee’s report.
 

 Disciplinary Board Recommendation
 

 After reviewing these consolidated matters, the disciplinary board found that the hearing committee’s factual findings are supported by the factual allegations in the formal charges and/or by the evidence submitted in support of those allegations. Based on these facts, the board determined that respondent violated Rules 1.1(a), 1.3, 1.4, 1.5(f)(5), 1.16(a)(3), 1.16(d), 3.2, 3.4(c), 8.1(c), 8.4(a), 8.4(b), 8.4(c), and 8.4(d) of the Rules of Professional Conduct, as well as Supreme Court Rule XIX, § 8(C).
 

 
 *892
 
 With respect to Rule 1.15, the board indicated that respondent failed to distribute succession proceeds to the Cantey heirs, despite receiving those funds in |nJuly 2002. However, the board noted that there is no evidence in the record to indicate respondent actually received the funds and converted those funds, but the deemed admitted facts support such a finding. The board also indicated that respondent failed to return Ms. Kalantari’s $10,000. Instead, she deposited the money into her business account, the balance of which subsequently fell below $10,000. Respondent further collected an advance fee from Mr. Jefferson, failed to perform any services, and failed to return Mr. Jefferson’s funds. Finally, the board indicated that respondent issued numerous checks from her escrow account, totaling more than $100,000, which were returned because of insufficient funds. Accordingly, the board found that respondent violated Rules 1.15(a)(d)(e). However, in the Ka-lantari matter, the board found that Rules 1.15(c)(e)(f) have no application to the misconduct alleged in the formal charges.
 

 The board determined that respondent knowingly and intentionally violated duties owed to her clients, the legal system, the public, and the legal profession. She caused serious actual harm by failing to refund unearned fees and converting client funds. The board noted that several clients had to pay other attorneys to complete their legal matters. Citing the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 as well as this court’s prior jurisprudence involving conversion and abandonment of a law practice, the board determined that the baseline sanction is disbarment. The board also agreed with the aggravating and mitigating factors found by the committee.
 

 Considering respondent’s misconduct in light of the permanent disbarment guidelines and the prior jurisprudence of this court, the board recommended that respondent be permanently disbarred. The board further recommended that respondent provide accountings and restitution, plus legal interest, to her victims and | prepay the Louisiana State Bar Association’s Client Assistance Fund as necessary. One board member dissented and would recommend ordinary disbarment.
 

 Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
 

 DISCUSSION
 

 Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence.
 
 In re: Quaid,
 
 94-1316 (La.11/30/94), 646 So.2d 343;
 
 Louisiana State Bar Ass’n v. Boutall,
 
 597 So.2d 444 (La.1992).
 

 In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations.
 
 In re: Donnan,
 
 01-3058 (La.1/10/03), 838 So.2d 715.
 

 
 *893
 
 In this matter, the deemed admitted facts and the record support a finding that respondent failed to provide competent representation to a client, neglected several legal matters, failed to communicate with several clients, failed to account for and refund unearned fees, converted client and/or third-party funds, misused her escrow | ^account, committed criminal acts involving forgery and check kiting, abandoned her law practice, and failed to cooperate with the ODC in its investigations. Based on these facts, respondent violated the Rules of Professional Conduct as found by the disciplinary board. Respondent also violated Supreme Court Rule XIX, § 8(C), by failing to update her bar registration address when she relocated to Phoenix, Arizona.
 

 Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct.
 
 Louisiana State Bar Ass’n v. Reis,
 
 518 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances.
 
 Louisiana State Bar Ass’n v. Whittington,
 
 459 So.2d 520 (La.1984).
 

 The record supports a finding that respondent acted knowingly and intentionally. She violated duties owed to her clients, the public, and the legal profession, causing substantial actual harm. The applicable baseline sanction is clearly disbarment under both the ABA’s
 
 Standards for Imposing Lawyer Sanctions
 
 and our prior jurisprudence.
 
 See Louisiana State Bar Ass’n v. Hinrichs,
 
 486 So.2d 116 (La.1986). Therefore, the only issue presented for our consideration is whether respondent’s misconduct is so egregious as to warrant permanent disbarment.
 

 Supreme Court Rule XIX, Appendix E depicts conduct that may warrant permanent disbarment. We find that Guideline 1 (“[rjepeated or multiple instances of intentional conversion of client funds with substantial harm”) is applicable in this matter. The record indicates that respondent converted at least $168,000 in client |14and/or third-party funds and has not made restitution to any of her victims. In addition, respondent forged her husband’s signature on title transfer documents and kited checks in excess of $60,000 between her escrow account and personal account. These actions reveal a fundamental lack of moral character and fitness to practice law.
 

 We can conceive of no circumstance under which we would ever grant readmission to respondent. Accordingly, respondent must be permanently disbarred.
 

 DECREE
 

 Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record, it is ordered that the name of Karen J. Cooper (a/k/a Karen René Johnson), Louisiana Bar Roll number 26244, be stricken from the roll of attorneys and that her license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this State. It is further ordered that respondent provide accountings and restitution, plus legal interest, to her victims and repay the Louisiana State Bar Association’s Client Assistance Fund any amounts paid to claimants
 
 *894
 
 on her behalf. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
 

 [1]
 

 .
 
 The
 
 email indicated that the net worth of the estate to be distributed to the heirs was $39,134.51.
 

 [2]
 

 . Ms. Forbs paid respondent $75 for the consultation.
 

 [3]
 

 . According to the Louisiana Secretary of State's corporations database, respondent was an officer of Precise Title, LLC.
 

 [4]
 

 . The committee did not specifically find that respondent violated Rule 8.4(b), but this appears to be an oversight in light of its factual finding that respondent committed numerous criminal acts, including forgery and check kiting.